```
           IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF TEXAS
                     HOUSTON DIVISION
```

| | |
|---|---|
| KEITH SPARKS, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | |
| § | |
| THE BANK OF NEW YORK MELLON § | CIVIL ACTION NO. H-14-813 |
| f/k/a THE BANK OF NEW YORK, § | |
| as Trustee for the § | |
| Certificateholders of the § | |
| CWABS, Inc., Asset-Backed § | |
| Certificates, Series 2004-8, § | |
| § | |
| Defendant. § | |

MEMORANDUM AND ORDER

Pending is Defendant's Motion for Final Summary Judgment (Document No. 35). After carefully considering the motion, response, reply, and applicable law, the Court concludes as follows.

I. Background

Plaintiff Keith Sparks ("Plaintiff") purchased a home at 3523 La Costa Road in Missouri City, Texas (the "Property") on August 13, 2004. To finance the purchase, Plaintiff executed a Texas Home Equity Adjustable Rate Note in the amount of $119,000 (the "Note") secured by a Texas Home Equity Security Instrument (the "Deed of Trust") in favor of America's Wholesale Lender.[1] On

---

[1] See Document No. 35, ex. A-1 (Note); id., ex. A-2 (Deed of Trust).

May 18, 2011, America's Wholesale Lender assigned the Deed of Trust to Bank of New York Mellon f/k/a the Bank of New York, as Trustee for the Certificateholders of the CWABS, Inc., Asset-Backed Certificates, Series 2004-8 ("Defendant").[2]  Plaintiff has made no payments on his loan since October 2007, and the amount of Plaintiff's default exceeded $174,000 in March 2013.[3]

On October 11, 2011, Defendant's agent mailed to Plaintiff a Notice of Default and Intent to Accelerate via certified mail.[4]  Subsequently, on November 14, 2011, Defendant's agent sent Plaintiff a Notice of Acceleration via certified mail.[5]  In 2013, Defendant sought to foreclose on Plaintiff's home under Texas Rule of Civil Procedure 736, which provides an expedited foreclosure process.[6]  Plaintiff filed a separate suit against Defendant in state court on December 2, 2013, to prevent the foreclosure sale scheduled for the following day, alleging causes of action for violations of the Texas Constitution, fraud, negligent misrepresentation, breach of duty of good faith and fair dealing, breach of contract, and declaratory judgment.[7]

---

[2] Id., ex. A-3.

[3] Id., ex. A ¶ 6 (Aff. of Charlene Butler).

[4] Id., ex. B ¶ 5 (Aff. of Becky Howell); id., ex. B-1.

[5] Id., ex. B ¶ 6; id., ex. B-2.

[6] Document No. 1-3 at 2 (Orig. Pet.).

[7] Id.

Defendant timely removed Plaintiff's case,[8] after which Defendant counterclaimed for breach of contract, seeking (1) a declaratory judgment that Defendant may proceed with a foreclosure sale, and (2) an award of costs and attorney's fees.[9] Defendant moved for summary judgment, which the Court granted as to Plaintiff's claims, but denied as to Defendant's counterclaim, finding that Plaintiff in his Declaration had raised a fact issue as to whether the statute of limitations had run.[10] Defendant, now with additional summary judgment evidence that fully discredits Plaintiff's prior Declaration, moves again for summary judgment on its counterclaim.[11]

## II.  Standard of Review

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998).  A party opposing

---

[8] Document No. 1.

[9] Document No. 7 ¶¶ 53-66.

[10] Document No. 24.

[11] Document No. 35.

a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice. Id. "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." Id. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Id. 56(c)(3).

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden." Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2513 (1986). All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993). On the other hand, if "the factfinder could reasonably find in [the nonmovant's]

4

favor, then summary judgment is improper." Id. Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." Anderson, 106 S. Ct. at 2513.

### III. Discussion

Plaintiff argues in response to Defendant's motion for summary judgment that (1) the statute of limitations on Defendant's foreclosure action has run, and (2) the Note is void and not assignable to Defendant because the original lender and payee on the Note, America's Wholesale Lender, never existed.[12]

A. Statute of Limitations

The Court previously found that Plaintiff had raised an issue of fact as to whether the four year statute of limitations had run on the foreclosure claim,[13] see TEX. CIV. PRAC. & REM. CODE § 16.035(a), based on Plaintiff's prior Declaration stating, "I remember having received correspondence from the lender in late 2008 accelerating my indebtedness under the promissory note. I did

---

[12] Document No. 38 at 4-7.

[13] Document No. 24 at 10-11.

5

not receive any notices of default from the lender."[14]  Defendant's summary judgment evidence in support of its present motion completely discredits Plaintiff's previous Declaration.  The uncontroverted summary judgment evidence now is that (1) Plaintiff admits he has no copy of the putative 2008 correspondence, (2) Plaintiff in fact does not remember what the putative correspondence said, and (3) the putative correspondence could have been a notice of default or a notice of intent to accelerate.[15]

Under Texas law, a foreclosure action accrues upon effective acceleration, which "requires two acts: (1) notice of intent to accelerate, and (2) notice of acceleration."  <u>Holy Cross Church of</u>

---

[14] Document No. 22-1 ¶ 2.  Plaintiff has not refiled the prior Declaration in response to Defendant's present motion for summary judgment, nor does he produce any other evidence to support his contention that the statute of limitations has run.

[15] Document No. 35, ex. C at 24:18-25:23 ("Q. In response to your Summary Judgment, there was a Declaration.  I wanted to ask you a few questions about that.  That kind of leads up to my next few exhibits.  It says that you remember having received correspondence from the lender in late 2008 accelerating your indebtedness under the Promissory Note.  Do you remember who that notice came from, which mortgage servicer?  A. I don't know.  I don't know.  Q. Do you remember what the notice said?  A. No, I don't.  Q. Okay.  Your Declaration also says that you did not receive any notices of default from the lender.  So, you just received a Notice of Acceleration, but you didn't receive a Notice of Default or how did that work?  A. I recall seeing some correspondence accelerating the note.  I don't know -- you know, I don't know what the differences were in that correspondence, you know.  It very well could have been a notice of default, but I don't know what it said.  Q. It could have said a notice of intent to accelerate?  A. Could have said, yeah.  Certainly could have said that.  Q. Okay.  But do you have a copy of that notice?  A. I don't.  Q. Okay.  A. Unfortunately.  Q. And you don't know who the mortgage servicer was at the time?  A. I don't know.").

God in Christ v. Wolf, 44 S.W.3d 562, 566 (Tex. 2001). Viewed in the light most favorable to Plaintiff, his conclusory Declaration arguably raises a fact issue that he received one or the other of the two required documents, but not both. Plaintiff has therefore raised no fact issue that he received in 2008 *both* a notice of intent to accelerate *and* a notice of acceleration. On the other hand, Defendant produces uncontroverted evidence that the Note was accelerated in November 2011, fewer less than four years ago, when Defendant mailed to Plaintiff the Notice of Acceleration a month after having sent to him its Notice of Default and Intent to Accelerate. Accordingly, the statute of limitations has not run on Defendant's foreclosure action, and Defendant is not barred from foreclosing on the Property.

B.   Breach of Contract

"In Texas, '[t]he essential elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.'" Mullins v. TestAmerica, Inc., 564 F.3d 386, 418 (5th Cir. 2009) (quoting Aguiar v. Segal, 167 S.W.3d 443, 450 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)). Plaintiff disputes the existence of a valid contract,

arguing that the original lender, America's Wholesale Lender, never existed.[16]

Plaintiff in his amended answer to Defendant's counterclaim, added this defense:

> [Plaintiff] asserts as an affirmative defense that because "America's Wholesale Lender, a New York corporation", the original mortgagor, was not incorporated when the mortgage upon which Plaintiff's cause of action is based was executed, and has never been incorporated or licensed to business in the State of Texas for any purpose, the mortgage is invalid and void.[17]

Plaintiff now argues that because "America's Wholesale Lender, a New York Corporation never existed, it could not have been competent to enter into an agreement with [Plaintiff] or assign any agreement or security instrument concerning [Plaintiff] to a third party."[18]  Plaintiff does not deny, however, that this "non-existent" lender advanced to him $119,000 to help purchase the real property that is the subject of the mortgage. Moreover, Plaintiff *admits* that he owes the debt.[19]  Plaintiff's motion that America's Wholesale Lender does not exist evidently derives from a state trial court judgment in Florida, in which the court found a 2005

---

[16] Document No. 38 at 6-7.

[17] Document No. 32 at 4.

[18] Document No. 38 at 7.

[19] See id., ex. C at 29:2-4 ("Q. Okay.  And you agree that you owe the debt, right?  A. Yes.").

8

mortgage in favor of the lender, "America's Wholesale Lender, a New York Corporation," was invalid and void because America's Wholesale Lender at the time was not in fact incorporated in New York nor licensed to do business in Florida.[20]

Assuming that the Florida judgment is evidence sufficient to raise a fact issue that America's Wholesale Lender was not incorporated in New York, it is not evidence that America's Wholesale Lender was nonexistent.[21] In fact, the Court takes judicial notice that the entity known as America's Wholesale Lender has been a party to other litigation in this Court, and the Court previously observed that "America's Wholesale Lender is the trade name for Countrywide Home Loans."[22] Plaintiff's conclusory arguments relating to the purported non-existence of America's Wholesale Lender are insufficient to raise a genuine issue of fact regarding the validity of the contract between Plaintiff as Borrower and America's Wholesale Lender as Lender.

Plaintiff does not dispute that Defendant has established the remaining elements of its breach of contract claim. The uncontroverted evidence is that Defendant's predecessor in interest

---

[20] Document No. 40 at 2.

[21] Principles of estoppel also preclude Plaintiff from accepting the benefits of the loan and then taking an inconsistent position that the lender did not exist, or the loan was not made.

[22] Benitez v. America's Wholesale Lender, No. CIV.A. H-14-953, 2014 WL 3388650, at *1 n.3 (S.D. Tex. July 9, 2014) (Werlein, J.).

performed the contract by advancing the principal loan amount to Plaintiff for the purchase of real property, that Plaintiff has not made his promised payments on the Note since 2007, that Defendant has not received the amounts owed on the Note, and that Plaintiff's default after acceleration exceeded $174,000 in March 2013.[23]

C.  Declaratory Judgment

Defendant seeks a declaratory judgment authorizing foreclosure against Plaintiff.[24]  The uncontroverted summary judgment evidence is that the Note and Deed of Trust constitute a valid contract, that Plaintiff has not made payments on the Note since October, 2007, that Plaintiff admits he owes the debt, and that Plaintiff was lawfully served with both a notice of default and a notice of acceleration.  Under Texas law, "[a] party seeking to foreclose a lien created under TEX. CONST. art. XVI, § 50(a)(6), for a home equity loan . . . may file . . . a suit or counterclaim seeking a final judgment which includes an order allowing foreclosure under the security instrument and TEX. PROP. CODE § 51.002," as Defendant did here.  TEX. R. CIV. P. 735.  Because the summary judgment evidence establishes that: (1) a valid debt exists; (2) Plaintiff is in default under the Note and Deed of Trust; and (3) Plaintiff

---

[23] Document No. 35, ex. A ¶ 6; id., ex. C at 20:20-21:11; 28:23-29:7.

[24] Document No. 7 at 8-9; Document No. 35 at 12-13.

10

received in 2011 notices both of default and of acceleration, Defendant is entitled to foreclose on the mortgaged real property under the Deed of Trust and TEX. PROP. CODE § 51.002.

D. <u>Attorneys' Fees</u>

Defendant seeks to recover its attorneys' fees and costs incurred in defending this lawsuit.[25] In a diversity case based on state law claims, state law controls both the award of fees and the reasonableness of fees awarded. <u>Mathis v. Exxon Corp.</u>, 302 F.3d 448, 461 (5th Cir. 2002). Under Texas law, attorneys' fees may not be recovered unless provided for by statute or contract. <u>Dallas Cent. Appraisal Dist. v. Seven Inv. Co.</u>, 835 S.W.2d 75, 77 (Tex. 1992). Defendant argues that it is entitled to reimbursement under Section 9 of the Deed of Trust, which provides:

> If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, [or] (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations) . . . then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument . . . . Lender's actions can include, but are not limited to: . . . (c) paying reasonable attorneys' fees

---

[25] Document No. 7 at 9; Document No. 35 at 13.

to protect its interest in the Property and/or rights under this Security Instrument . . . .[26]

This Court has awarded attorneys' fees based on nearly identical Deed of Trust provisions after plaintiffs brought suit following foreclosure on their homes. *E.g.*, May v. Wells Fargo Bank, N.A., CIV. 4:11-3516, 2013 WL 4647673 at *5 (S.D. Tex. Aug. 29, 2013) (Atlas, J.) (citing In re Velazquez, 660 F.3d 893, 899-900 (5th Cir. 2011) (reversing district court decision denying fees based on identical provision)).

The Fifth Circuit calculates the amount of reasonable attorney's fees using the "lodestar method," in which the district court multiplies the reasonable number of hours expended on the litigation by the reasonable hourly rate for the participating lawyer. Forbush v. J.C. Penney Co., 98 F.3d 817, 821 (5th Cir. 1996). The movant bears the burden of documenting the appropriate hours expended and hourly rates. Hensley v. Eckerhart, 103 S. Ct. 1933, 1941 (1983).

Defendant has submitted the affidavit of Michael C. Maus, its attorney of record, in support of Defendant's request for attorneys' fees and costs.[27] Maus lists a total of 35.7 attorney hours of legal work performed in this case by Barrett Daffin Frappier Turner & Engel, LLP, states that this work was both

---

[26] Document No. 35, ex. A-2 at 14 of 27.

[27] Id., ex. D.

reasonable and necessary, and that Defendant's reasonable attorneys' fees and expenses through April 27, 2015, total $8,804.91, comprising $8,032.50 in attorneys' fees at a rate of $225 per hour, and $772.41 in expenses, and after April 27th an additional sum of $750.00 for replying to Plaintiff's response to this motion.[28]  The Court finds that at least 35.7 hours of legal work was reasonably necessary in this case through April 27th, which required that Defendant defend against and overcome Plaintiff's meritless claims and opprobrious tactics--including Plaintiff's filing of a since wholly discredited Declaration that led to partial denial of the original summary judgment motion against him.[29]  Moreover, Defendant's counsel's hourly rate of $225 per hour for the services rendered is reasonable and well within the bounds of fees for like and similar legal services rendered in this community.  The Court grants Defendant's motion for an award of reasonable and necessary attorney's fees and expenses, and finds that Defendant is entitled to recover attorney's fees in the amount of $8,782.50 ($8,032.50 through April 27, 2015, plus $750.00 subsequently incurred in preparing and filing Defendant's Reply in support of its Motion for Summary Judgment), and expenses in the

---

[28] Id.

[29] Plaintiff's counsel does not appear blameless in this employment of the courts to avoid rather than to advance justice, and is no less deserving of the Court's disapprobation.  *See* FED. R. CIV. P. 11(b).

amount of $772.41, for a total award of $9,554.91. If Plaintiff unsuccessfully appeals from the Final Judgment entered in this case, Defendant shall recover from Plaintiff an additional sum of $8,500.00 in reasonable and necessary attorney's fees and expenses incurred in successfully defending the Final Judgment on appeal.

## IV. Order

For the foregoing reasons, it is

ORDERED that Defendant's Motion for Final Summary Judgment (Document No. 35) is GRANTED, and it is

ORDERED and DECLARED that Defendant may forthwith proceed with a non-judicial foreclosure sale of the property that secures the Note indebtedness, to wit:

> Lot twenty-one (21), in block three (3), OF QUAIL VALLEY SUBDIVISION, ELDORADO SECTION, a subdivision in Fort Bend County, Texas, according to the map or plat thereof recorded in Volume 7, Page 1, of the Plat Records of Fort Bend County, Texas,

pursuant to the Note and the Deed of Trust and in accordance with TEX. PROP. CODE § 51.002. It is further

ORDERED that Defendant shall have and recover from Plaintiff reasonable and necessary attorney's fees and costs in the amount of NINE THOUSAND FIVE HUNDRED FIFTY-FOUR and 91/100 DOLLARS ($9,554.91), plus an additional EIGHT THOUSAND FIVE HUNDRED and

No/100 DOLLARS ($8,500.00) if Plaintiff unsuccessfully appeals from the Final Judgment entered herein.

The Clerk shall notify all parties and provide them with a true copy of this Order.

SIGNED at Houston, Texas, on this 7th day of July, 2015.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE